**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA RENEE COOPER,** | : | |
| | : | **Case No. 2:18-cv-1222** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **PJ APARTMENTS, LLC, dba** | : | |
| **VILLAGE SQUARE** | : | |
| **APARTMENTS, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment. (ECF No. 54, No. 58). For the reasons indicated herein, both parties' motions for summary judgment are **DENIED**.

**I.    BACKGROUND**

Ms. Cooper has lived in a third-floor apartment in the Village Square Apartments ("VSA") complex, operated by PJ Apartments, LLC, in Morrow County since November 1, 2017.  (ECF No. 54 at 2). The Morrow County Metropolitan Housing Authority (MCMHA) issues Ms. Cooper a Section 8 Housing Choice Voucher which is used to pay Ms. Cooper's full rent to VSA each month. *Id.* Ms. Cooper alleges she suffers from asthma, osteoarthritis in multiple joints, and torticollis, which make "walking, climbing flights of stairs, and breathing" difficult.  (ECF No. 58 at 6).

The parties dispute whether Ms. Cooper made a request for accommodation when she first met with a representative for the VSA to fill out her rental application. Defendants allege that Ms. Cooper made no request for accommodation and that she had listed several labor-

intensive jobs in her employment history. (ECF No. 54 at 2). Plaintiff alleges that when she inquired about renting at VSA she specifically asked about handicapped parking availability and made an oral request for a first-floor unit at the time she signed the lease agreement. (ECF No. 63 at 2).

On March 6, 2018, VSA offered Ms. Cooper a first-floor apartment. Plaintiff alleges that when she informed VSA representative Mark Sherman that her daughter was interested in applying for an apartment and that her daughter had an infant, Sherman told her that the first floor unit would first be given to her daughter since VSA had a policy requiring infants to live only on the first floor. (ECF No. 63 at 3). Defendants allege that they offered Ms. Cooper the first-floor apartment and that she declined the offer and instead chose to allow her daughter and her grandchild to rent the first-floor apartment. (ECF No. 54 at 15). They cite a letter written and signed by Ms. Cooper granting permission for her daughter to move into the first-floor apartment. *Id.*

On April 16, 2018, Ms. Cooper's counsel sent the first written request for accommodation, asking that Ms. Cooper be permitted to move to an apartment on the first floor as an accommodation for her conditions.  (ECF No. 58 at 7). Plaintiff alleges that a first-floor unit again became available in May, but Defendants felt that VSA representative Sherman deserved this first floor unit more than Plaintiff. (ECF No. 63 at 4). Ms. Cooper's counsel followed up with a second letter on May 7, 2018 that included a doctor's note stating that Ms. Cooper suffers from several conditions and that it is in her best interest to have a first-floor apartment. (ECF No. 63 at 5).

Plaintiff's counsel sent a third letter to Defendants on June 27, 2018 stating that Defendants' failure to relocate Plaintiff constituted a violation of the Ohio Fair Housing statute

and the federal Fair Housing Act. (ECF No. 63 at 5-6). Plaintiff alleges that a third first floor unit became available in August 2018 but Defendants decided not to offer it to Ms. Cooper and instead notified her that they would terminate her lease. *Id*. at 6. On August 1, 2018, Defendants issued Plaintiff a notice indicating they would not be renewing her lease and gave her until October 18, 2018 to vacate her unit.  *Id*.

On October 12, 2018, Plaintiff filed a complaint and motion for a temporary restraining order. (ECF No. 3). Ms. Cooper stated that this notice to vacate her apartment has caused her "extreme stress and anxiety," which has exacerbated her seizures and caused her to seek additional counseling and stronger seizure medication.  (ECF No. 3 at 5–6).  Ms. Cooper alleged she had no alternative housing arrangements, could not afford to apply for additional housing, and feared that if forced to leave her apartment she would have "to live in [her] van."  (*Id.*).  This Court granted Ms. Cooper's motion for a temporary restraining order and enjoined Defendants from evicting Ms. Cooper. The matter was set for a preliminary injunction hearing on October 26, 2018, but the parties settled the claims for injunctive relief. (ECF No. 24). Defendants agreed to let Ms. Cooper remain in her unit and to relocate her to a first-floor unit before December 2018. *Id*. The settlement did not affect Ms. Cooper's underlying claims for disability discrimination in violation of 42 U.S.C § 3604 and 3617, the sections of the Fair Housing Amendments Act prohibiting discrimination and retaliation on the basis of disability, and the corresponding state statutes, O.R.C. §4112.02 and §5321.02.

Thereafter, the parties engaged in extensive discovery. Defendants filed a motion for summary judgment arguing that there are no triable issues of fact and that Defendants are entitled to judgement as a matter of law on all of Plaintiff's claims. (ECF No. 54). Plaintiff opposes Defendants' motion and filed a cross-motion for partial summary judgment, arguing

there is no dispute that Defendants violated her rights and requesting a trial solely on the issue of damages. (ECF No. 58).

## II.     STANDARD OF REVIEW

A motion for summary judgment is governed by the requirements of Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The party seeking summary judgment bears the initial burden of presenting law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If the moving party satisfies this initial burden, then the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248. The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position is not enough to survive summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

Finally, in ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091 (1990). When deciding whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

### III.   LAW AND ANALYSIS

Plaintiff has brought claims pursuant to the Federal Housing Amendments Act ("FHA"), 42 USC §3604, 3617 and the corresponding state statutes, O.R.C. §4112.02 and O.R.C. §5321.02. Both the FHAA and the Ohio statutes prohibit discrimination in the provision of

housing accommodations on the basis of disability and retaliation for attempting to assert such rights. Courts consider these claims together since the statutes are analyzed under the same standards. *See Turner v. Am. Bldg. Condo. Corp.*, No. 1:12-CV-291, 2014 WL 4774003, at *5 (S.D. Ohio Sept. 24, 2014) (citing *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1043 (6th Cir.2001)).

## A.  FAILURE TO ACCOMMODATE

A failure to make reasonable accommodations for a disabled individual is one form of a violation of the FHA. *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 538 (6th Cir. 2014). To make out a claim for failure to make reasonable accommodations, a plaintiff is required to show that:

> she suffers from a disability, that she requested an accommodation or modification, that the defendant housing provider refused to make the accommodation or to permit the modification, and that the defendant knew or should have known of the disability at the time of the refusal.

*Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014). In addition to proving the above, the plaintiff is also required to prove that the proposed accommodation is both reasonable and necessary. *Id*.

At trial, the ultimate burden of persuasion as to a reasonable accommodation claim is on the plaintiff to prove these aspects of her claim. At the summary judgment stage, however, the moving party bears the burden of showing that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. *Id*. at 543. The determination of whether a requested accommodation is required by law is "highly fact-specific, requiring case-by-case determination." *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001) (internal citations and quotation marks omitted).

Plaintiff and Defendants do not dispute that Ms. Cooper requested an accommodation, but they do dispute whether Ms. Cooper suffers from a disability, whether Defendants provided an accommodation, and whether Ms. Cooper's proposed accommodation was necessary. Defendants move for summary judgment on the basis that Plaintiff is not disabled pursuant to the FHA and that in any case Defendants offered her a first-floor unit before she even requested an accommodation. Plaintiff moves for summary judgment on the issue of liability arguing that there is no issue of fact that she is disabled and Defendants were aware of this, that she requested an accommodation, and that she was denied a first floor unit after making a request despite the fact that there were first floor units available at the time of her requests.

### 1.  Was Plaintiff "Handicapped"?

Defendants move for summary judgment on the basis that Plaintiff has failed to establish she is disabled within the meaning of the FHA because her alleged impairments do not substantially limit any of her life activities. (ECF No. 54 at 14). Plaintiff responds that she has provided evidence of impairment through a note and declaration from her physician and through her testimony as to her disabilities. (ECF No. 63 at 12-13).

> The FHA refers to a disability as a "handicap" and defines a "handicap" as:
> "(**1**) a physical or mental impairment which substantially limits one or more of such person's major life activities,
> (**2**) a record of having such an impairment, or
> (**3**) being regarded as having such an impairment."

42 U.S.C. § 3602. Major life activities include but are not limited to "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201. Because the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA") both define disability in a similar manner, courts use ADA and RA

caselaw in reviewing claims brought pursuant to the FHA.[1] *See Powers v. Kalamazoo Breakthrough Consumer Hous. Co-op.*, No. 1:07-CV-1235, 2009 WL 2922309, at *4 (W.D. Mich. Sept. 9, 2009) (citing *Dadian v. Village of Wilmette,* 269 F.3d 831, 837 (7th Cir.2001) and *United States v. Southern Management Corp.,* 955 F.2d 014, 922-23 (4th Cir.1992)). An individual is "substantially limited" by a disability when the disability "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives" and the limitation is "permanent or long term." *Id.* at *4.

 Defendants argue that Plaintiff is not disabled because she admitted during her deposition that she can do all of the major life activities discussed in the regulation including caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. (ECF No. 54 at 14). Defendants add that Plaintiff's use of Tylenol and inhalers alleviate the symptoms of her medical conditions and that symptoms that can be addressed with mitigating measures do not constitute substantial impairments. (ECF No. 62 at 7). Plaintiff responds that the ability to do an activity is not a sign that she is not disabled arguing there is a "very clear distinction between the ability to 'do' an activity and a 'substantial limitation' in doing that activity." (ECF No. 63 at 12).

 In assessing whether a plaintiff is "handicapped," "[i]t is not enough, for an impairment to affect a major life activity, rather, the employee must proffer evidence from which a reasonable inference can be drawn that such activity is substantially limited." *Robbins v. Am. Preferred Mgmt. Co.*, No. 5:05-CV-182, 2007 WL 2728746, at *6 (W.D. Mich. Sept. 17, 2007)

---

[1] This Court takes note of the fact that the ADA and the RA were amended by the ADA Amendments Act of 2008 which altered the definition of the term "disability" to include a broader subset of individuals, resulting in a situation where "some individuals may not be 'handicapped' within the meaning of the FHAA even though they are 'disabled' within the meaning of the ADA and the Rehabilitation Act." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 255 (S.D.N.Y. 2014) (internal citations omitted). Accordingly, this Court will rely only on pre-2008 ADA and RA cases for its analysis regarding whether an individual is "handicapped" within the meaning of the FHA.

(granting motion for summary judgment in Rehabilitation Act case where plaintiff's evidence identified no major life activity that was limited by her asthma and evidence presented showed only short term difficulty with walking). While a plaintiff does have to show she is "substantially limited," she does *not* have to show an "utter inability[y]" to perform a substantial life activity. *Bragdon v. Abbott*, 524 U.S. 624, 641, 118 S. Ct. 2196, 2206 (1998) (noting that "[w]hen significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable" in ADA case). In determining if an impairment substantially impacts a life activity, courts are to consider: "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Thompson v. UGL Unicco Serv. Co.*, 750 F. Supp. 2d 907, 914 (W.D. Tenn. 2010) (quoting *E.E.O.C. v. DaimlerChrysler Corp.,* 111 Fed.Appx. 394, 399 (6th Cir.2004)). Furthermore, where a plaintiff is taking corrective measures to mitigate an impairment, "the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999), *overturned on other grounds due to legislative action* (2009).

Here, Plaintiff has testified that her conditions substantially affect her ability to walk and climb stairs and has presented evidence that these conditions are permanent. (ECF No. 63 at 13). Furthermore, the declaration of her physician indicates that Ms. Cooper takes prescription medication and receives Botox injections to manage her pain but that the symptoms associated with her conditions are still "exacerbated by climbing stairs" even with mitigating measures. (ECF No. 63-1 at 1-2). Considered as a whole, this evidence is sufficient to create a genuine issue of material fact as to whether Ms. Cooper is disabled. *See Powers v. Kalamazoo*

*Breakthrough Consumer Hous. Co-op.*, No. 1:07-CV-1235, 2009 WL 2922309, at *6 (W.D. Mich. Sept. 9, 2009) (denying defendant's motion for summary judgment noting a "jury could reasonably conclude that she has physical impairments which substantially limit one or more of her major life activities and is 'handicapped' for purposes of the FHA" based on plaintiff's affidavit reporting pain and difficulty walking and two medical evaluations which provided support). The fact that Ms. Cooper walks at work does not negate the evidence that Plaintiff has presented that she suffers from conditions that cause her extreme pain and difficulty climbing stairs. Similarly, the fact that Plaintiff has presented such evidence does not negate Defendant's evidence that Plaintiff has testified that she can perform all of the activities listed in the regulation, that she cleans 12-13 rooms a day, walks up to 10,000 steps a day, and conducts significant physical activity at work. (ECF No. 65 at 3). The evidence presented from both sides raises a genuine issue of material fact as to whether Ms. Cooper is disabled.

Defendants also argue that Plaintiff bases her entire complaint on a letter from her physician, Dr. Koehler, and that this letter is insufficient because it does not describe plaintiff as disabled nor state that it is medically necessary for Plaintiff to have a first floor apartment. (ECF No. 54 at 14). Defendants cite to no caselaw supporting their allegation that a letter from a physician must state that the individual is disabled and state specifically that an accommodation is "medically necessary." Instead, Defendants argue generally that the "FHAA requires a reasonable accommodation to be medically necessary to assist an individual's handicap" to be successful. (ECF Np. 54 at 14-15; No. 65 at 5-6).

Defendants are correct that a plaintiff is required to show that a proposed accommodation is necessary to assist an individual's handicap pursuant to the FHA. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014). Defendants, however, are conflating the

necessity element with the disability element, which only requires that a plaintiff demonstrate that she is disabled. For a plaintiff to demonstrate that she is disabled within the meaning of the Act, a letter from a physician need not specifically state that the plaintiff is "handicapped" nor that the proposed accommodation is "medically necessary." *See Powers v. Kalamazoo Breakthrough Consumer Hous. Co-op.*, No. 1:07-CV-1235, 2009 WL 2922309, at *6 (W.D. Mich. Sept. 9, 2009) (denying summary judgment where physician's letter—in addition to plaintiff's testimony—indicated that plaintiff suffered knee pain as a result of a medical condition). The fact that the Dr. Koehler's letter fails to state that a proposed accommodation is medically necessary neither supports nor negates Ms. Cooper's claim of disability. It is instead useful for assessing whether the accommodation—a first floor unit— is, in fact, necessary.

Furthermore, while a plaintiff attempting to prove disability status "must proffer evidence beyond a medical diagnosis" a plaintiff can do so "by demonstrating that the impairment is substantially limiting in terms of her own experiences." *Brady v. Potter*, 476 F. Supp. 2d 745, 754 (N.D. Ohio 2007), *aff'd*, 273 F. App'x 498 (6th Cir. 2008). Here, Plaintiff has made this factual showing by citing to her testimony that her impairments make climbing stairs painful due to arthritis in her knees and her asthma. (ECF No. 63 at 13). Plaintiff also cites to portions of Dr. Koehler's declaration which indicate that her impairments are chronic and greatly affect her mobility. *Id*. Considering the evidence as a whole, there is a genuine issue of material fact as to whether Plaintiff is disabled within the meaning of the FHA.

### 2.  Did Defendants Offer a Reasonable Accommodation that was Necessary?

Defendants also oppose summary judgement on the basis that they offered Plaintiff a first-floor unit in March 2018 which she refused. (ECF No. 54 at 15). Defendants cite to a letter written by the Plaintiff granting permission for her daughter to move into the first-floor

apartment that Defendants offered. *Id.* Plaintiff's March 6, 2018 letter, signed by Lisa Cooper, states: "I give my permission to let my daughter and Grandson move into Apt. 105 with Shyloh A.S. Hare." (ECF No. 16-3).

Plaintiff argues that she did not turn down the rental unit and that the offer of the first-floor unit was rescinded when Ms. Cooper informed Defendants that her daughter was interested in moving into the complex. (ECF No. 63 at 17). According to Plaintiff, Defendants had a policy of only permitting families with young children to live on the first floor, and Defendants informed her that if her daughter applied, she would be given priority for the first-floor unit. *Id*. Plaintiff also argues that even if she had turned down Defendants' first offer, Defendants were obligated to grant Ms. Cooper's subsequent reasonable accommodation request. *Id*. Because Defendants and Plaintiff have presented conflicting evidence as to what happened when Defendants offered a first-floor apartment to Ms. Cooper in March 2018, a genuine issue of material fact exists as to whether Defendants rescinded their offer for a first floor apartment.

As to Plaintiff's continuing obligation argument, it is clear that a housing provider is obligated to respond to a reasonable accommodation request once it is made, and the failure to "reach an agreement on an accommodation request is in effect a decision by the provider not to grant the requested accommodation." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (noting that a delay in making a decision on a reasonable accommodation request can in certain cases amount to a constructive denial). A housing provider satisfies their obligation under the FHA by offering a unit that reasonably accommodates a claimant's disability. *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 263 (S.D.N.Y. 2014) (finding issue of fact as to whether defendant's offer of an apartment with three interior steps was sufficiently accessible to reasonably accommodate plaintiff and his mother).

12

When a plaintiff declines an offer of reasonable accommodation, however, that fact will be a relevant factor for assessing whether the proposed accommodation is, in fact, necessary and not merely a preference. *Logan*, 57 F. Supp. 3d at 263. In *Logan*, the plaintiff refused a first-floor handicap accessible apartment that his housing provider made available to him on account of his and his mother's disability. The *Logan* plaintiff's reason for refusing the apartment was not, however, related to his disability, and was instead due to his discomfort with the building where the unit was located. The court determined that defendants had offered to make a reasonable accommodation, since plaintiff's comfort level with building was not necessary to afford him an equal opportunity to use and enjoy the dwelling. *Id.*

Here, Defendants present evidence that a first floor apartment was not necessary by pointing to Ms. Cooper's ability to conduct extensive manual labor and the fact that Ms. Cooper declined the offer of a first floor apartment in order to allow her daughter to move into the first floor unit with her grandchild. (ECF No. 62 at 7, 9-10). Plaintiff disputes this account of the events and offers evidence from her physician who stated his belief that it is in Ms. Cooper's best interest to be placed in a first-floor apartment. This competing evidence creates a genuine issue of material fact as to whether the proposed accommodation was necessary for allowing Plaintiff an "equal opportunity to use and enjoy [the] dwelling." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011). Accordingly, summary judgment is inappropriate on Plaintiff's failure to accommodate claim, and Defendants' and Plaintiff's cross-motions for summary judgment are **DENIED**.

## B. RETALIATION

Defendants also move for summary judgment as to Plaintiff's retaliation claim but make no independent argument in support of their motion, instead stating that they "hereby rely on

their arguments above as to the reasons that the Plaintiff's Retaliation Claims must be dismissed." (ECF No. 54 at 15). Plaintiff opposes this motion arguing that there are numerous genuine issues of fact that exist with respect to her retaliation claim, citing a 60-day termination of lease notice issued by Defendants because she was attempting to assert her rights pursuant to the FHA. (ECF No. 63 at 18).

It is not the Court's role to make arguments for a party or determine which arguments a defendant seeks to raise. *See Uduko v. Cozzens*, 975 F. Supp. 2d 750, 775–76 (E.D. Mich. 2013). It is insufficient for a moving party to mention an argument "in a most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997) (noting that issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). A court is not required to make a party's case by "scouring the various submissions to piece together appropriate arguments" nor to "wade through and search the entire record for some specific facts that might support their motion." *Uduko,* 975 F. Supp. 2d at 775–76 (internal citations and quotation marks omitted).

Even if Defendants had properly moved for summary judgment on the retaliation claim, their claim would fail since genuine issues of material fact exist as to whether Plaintiff was disabled and entitled to request an accommodation pursuant to the FHA. To succeed on a claim for retaliation pursuant to 42 U.S.C. § 3617, plaintiffs must show:

> 1) that they exercised a right guaranteed by the FHA; 2) that defendants' intentional conduct constituted coercion, intimidation, threat, or interference; and 3) that there was a causal connection between plaintiffs' exercise of their FHA rights and the defendants' conduct.

*Robbins v. Am. Preferred Mgmt. Co.*, No. 5:05-CV-182, 2007 WL 2728746, at *11 (W.D. Mich. Sept. 17, 2007) (citing *Hood v. Midwest Sav. Bank,* 95 F. App'x 768, 779 (6th Cir.2004)).

14

Here, Plaintiff alleges she was issued this lease termination notice because she sought an accommodation for her disability. (ECF No. 63 at 18). In their reply, Defendants argue that they are entitled to choose to not renew any lease agreement with a tenant once the lease term expires. (ECF No. 65 at 8). Defendants essentially argue that their exercise of a contractually specified right cannot constitute retaliation. The exercise of a contractually specified right can constitute retaliation if the conduct is done to interfere with a claimant's exercise of rights pursuant to the FHA. *See Ponce v. 480 E. 21st St., LLC*, No. 12 CIV. 4828 ILG JMA, 2013 WL 4543622, at *4 (E.D.N.Y. Aug. 28, 2013) (denying motion to dismiss noting that the defendants' decision to refuse to renew a lease can be considered a "retaliatory act" pursuant to the FHA). Accordingly, because there are genuine issues of material fact as to why Defendants issued the non-renewal of lease notice, Defendants' motion for summary judgment on Plaintiff's retaliation claim is **DENIED**.

## IV.    CONCLUSION

The Court hereby **DENIES** Defendants' Motion for Summary Judgement (ECF No. 54) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 58).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  July 15, 2020**